IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNIE PHILLIPS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BRAMUCCI, et al.,<br><br>　　　　Defendants. | No. C 15-01533 EJD (PR)<br><br>ORDER OF PARTIAL SERVICE; DISMISSING CERTAIN CLAIMS WITH LEAVE TO AMEND; DIRECTING DEFENDANTS TO FILE DISPOSITIVE MOTION OR NOTICE REGARDING SUCH MOTION; INSTRUCTIONS TO CLERK |

Plaintiff, a state prisoner at Pelican Bay State Prison ("PBSP"), filed the instant civil rights action in pro se pursuant to 42 U.S.C. § 1983, against prison officials. Plaintiff's motion for leave to proceed in forma pauperis will be granted in a separate order.

**DISCUSSION**

**A.    Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious,

Order of Partial Service
P:\PRO-SE\EJD\CR.15\01533Phillips_svc.wpd

fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

### B.     Plaintiff's Claims

Plaintiff's primary claim is that his placement in, and continued retention in, Security Housing Unit ("SHU") violates his constitutional rights. According to the complaint, on or about late 2005, Plaintiff was wrongly validated as a prison gang member and assigned to isolation in the SHU in retaliation for his litigation against prison officials; in retaliation for an altercation between Plaintiff and prison officials,[1] and as part of prison officials' attempt to isolate black inmates in SHU in response to "overblown" fears of a race riot. (Compl. at 7, 9.)

Plaintiff was wrongly housed in SHU facilities intended for members of the four main prison gangs (Aryan Brotherhood, Black Guerilla Family, South Mexican Mafia, Northern Familia). (Id. at 11.) These facilities have "specific atypical hardships" distinct from and more onerous than those founds in other regular SHU facilities. (Ibid.) These restrictions include: taunting, physical attacks, and hate from all four main prison gangs; no real possibility for parole or release from SHU; and prohibiting him from corresponding with his only child. (Ibid.)

Plaintiff was eligible for inactive review and release from SHU in 2012,

---

[1]According to the complaint, prison officials accused Plaintiff of previously assaulting them. (Compl. at 7.) Plaintiff claims that four prison officers were beating and pepper spraying him in full view of the entire prison yard and that some prisoners chose to intervene and assaulted staff. (Ibid.) Plaintiff states that these prisoners did not know him and that Plaintiff had lost consciousness at the time of the assault on the prison guards. (Ibid.)

Order of Partial Service
P:\PRO-SE\EJD\CR.15\01533Phillips_svc.wpd            2

pursuant to a 2012 Special Threats Group ("STG") plan implemented by Defendant Stainer, which requires that an inmate's gang status be reviewed every four years; previously, an inmate's gang status was reviewed every six years. (Id. at 8–9.) However, Plaintiff has been wrongfully denied an inactive review, while other similarly situated prisoners are both reviewed and released from SHU. (Id. at 8.)

In January 2012, Defendant Barneburg falsely claimed that gang-related materials had been discovered during a search of Plaintiff's cell and submitted them to the Office of Correctional Safety ("OCS"). (Compl. at 5, 8.) The OCS "maliciously approved the items" as gang-related without taking into account Plaintiff's written objections. (Id. at 5, 8.) This false evidence of gang activity was used to "misinform[] the decisions at plaintiff's 2013 and 2014 annual committees regarding eligibility." (Id. at 8.) Plaintiff claims that the submission of false evidence was initiated by Defendant Murphy. In support of this allegation, Plaintiff states that at his initial validation, Murphy "promised" that Plaintiff would spend the rest of his life in SHU if he did not "confess and separate from a statewide conspiracy by black inmates to kill staff." (Id. at 5.)

Plaintiff appears to have been re-validated as a prison gang member in 2012. (Compl. at 15.)

At Plaintiff's annual hearing on October 30, 2013, Plaintiff requested inactive review pursuant to the new regulations. (Compl. at 5.) PBSP Warden Barnes informed Plaintiff that he was ineligible for inactive review due to the November 4, 2010 discovery of a "stale address book." (Ibid.) On or around October 2014, in preparing for his annual hearing, Plaintiff informed his correctional counselor Defendant Walsh that his 128-B-2 listed two different inactive dates, only one of which was correct. (Compl. at 6.) On October 1, 2014, Walsh "botched" the annual hearing by using the incorrect inactive date. (Ibid.) Defendant Puget promised to clear up the misunderstanding and that Plaintiff's inactive review would take place in 2015. (Ibid.)

Plaintiff attempted to file a complaint against Walsh for misconduct by a peace officer pursuant to Section 148.6 of the California Penal Code. (Compl. at 6.) On December 19, 2014, Plaintiff was deterred from filing his complaint by Defendants Ducart and Bramucci. (Ibid.)

Plaintiff requested that Walsh postpone his parole hearing until Plaintiff was released from SHU. (Compl. at 6.) Plaintiff believes that his status as an active gang member and his housing in SHU — which would require that he appear before the parole board in mechanical restraints — would prejudice him with the parole board. (Id. at 6 and 16.) On January 7, 2015, Walsh claimed that he was unable to process Plaintiff's postponement request and directed Plaintiff to stipulate to the Board of Parole that he was unsuitable for parole. (Id. at 6.) Plaintiff alleges that Walsh's actions were taken in retaliation for Plaintiff's attempt to file an action against him pursuant to Section 148.6. (Ibid.)

On January 9, 2015, Defendant Frisk authored a gang investigation report concluding that there was insufficient evidence to validate Plaintiff as an active associate of the Black Guerilla Family prison gang. (Compl. at 15.)

Plaintiff also alleges that prison officials have further violated their own regulations and policies in the following ways: (1) housing Plaintiff in PBSP SHU despite his mental health issues; (2) refusing to allow Plaintiff to correspond with his daughter; (3) maliciously disposing of Plaintiff's personal family photos, 50 postage stamps, and his television; (4) on February 14, 2012, prison officials intimidated Plaintiff into relinquishing his personal prescription glasses (Compl. at 9–10.)

Furthermore, Plaintiff alleges that prison officials have retaliated and discriminated against black prisoners for participating in hunger strikes, by cancelling PBSP's black entertainment station, and by expanding the criteria for prison gangs to encompass black street gangs that did not previously fall within the four major groups.

Plaintiff names the following prison officials as defendants: California

Department of Corrections and Rehabilitation ("CDCR") Director D. Stainer; PBSP Warden Ducart; PBSP Associate Warden Puget; OCS Officer Murphy; OCS Officer Rogers; PBSP Assistant Governmental Prog. Analyst; PBSP Chief Deputy Warden Bradbury; PBSP Institutional Gang Investigation ("IGI") Officer Barneburg; PBSP Correctional Counselor Walsh; Townsend; Hubbard; Swift; Tupy; and Frisk. (Compl. at 4, 11, 12, and 15.)

**C.     Analysis**

    **1)     Due Process**[2]

Plaintiff claims that his indeterminate SHU term for gang association violates his due process rights in the following ways: (1) Defendants Stainer, Hubbard, Ducart, Puget, Murphy and Frisk placed and/or retained Plaintiff in SHU on the basis on erroneous, unreliable, and untrue information that fails to satisfy the "some evidence" standard; (2) Defendants Ducart, Puget, and Walsh failed to provide meaningful classification reviews in 2013 and 2014; (3) Defendants Stainer, Hubbard, Ducart, Puget, Murphy and Frisk's incorrect labelling of Plaintiff as a gang member prevents him from becoming an inactive gang member since that process requires him to divulge information about his non-existent gang membership; (4) Defendants Stainer, Hubbard, Ducart, Puget, Murphy and Frisk's gang validation and debriefing process is merely a pretext for retaining Plaintiff in SHU; and (5) Defendants Stainer, Hubbard, Ducart, Puget, Murphy and Frisk failed to assess the reliability of the items used to validate him and failed to show that these items related to actual gang activity.

---

[2] Plaintiff incorrectly claims that his federal due process rights arise under the Eighth and Fourteenth Amendment of the United States Constitution. The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. Board of Regents v. Roth, 408 U.S. 564, 570–71 (1972); U.S. Const. amend. XIV, § 1. The Eighth Amendment, however, does not address due process rights. It prohibits excessive bail, excessive fines, and cruel and unusual punishment. U.S. Const. amend. VIII.

Plaintiff challenges the regulations governing gang validation as void for vagueness because the regulations grant unbridled discretion to CDCR Director Stainer and senior staff to "pick and choose who to review for release;" fail to give inmates adequate notice of what conduct is permissible under the new STG label system; and cannot be enforced fairly because they lack clear standards.

When placement in administrative segregation impairs an inmate's liberty interest, the Due Process Clause requires prison officials to provide the inmate with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986)). In addition to the notice and opportunity for presentation requirements, due process requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104–05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Hill, 472 U.S. at 455; Toussaint, 801 F.2d at 1105. The evidence relied upon must have "some indicia of reliability." See Madrid v. Gomez, 889 F.Supp. 1146, 1273–74 (N.D. Cal. 1995). The "some evidence" standard applies to an inmate's placement in SHU for gang affiliation. See Bruce, 351 F.3d at 1287–88. In addition, due process requires that prison officials engage in some sort of periodic review of an inmate's confinement in administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9 (1983) abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995); Toussaint, 801 F.2d at 1101. Lower courts have found that those periodic reviews must be more than "meaningless gestures" to satisfy due process. Toussaint v. Rowland, 711 F.Supp. 536, 540 n.11 (N.D. Cal. 1989) (citing Toussaint, 801 F.2d at 1102). Accordingly, liberally construed, Plaintiff's allegations challenging his placement and continued retention in administrative segregation in the SHU state

1  cognizable due process claims against Defendants Stainer, Barneburg,[3] Bradbury,[4]
2  Murphy, and Walsh.

3　　　　Plaintiff fails to state due process claims against Hubbard, Ducart, and Puget.
4  To state a claim against a state official under section 1983, Plaintiff must allege
5  direct individual participation by each "person" named as a defendant. Taylor v.
6  List, 880 F.2d 1040, 1045 (9th Cir. 1989). There is no allegations that either
7  Hubbard, Ducart or Puget directly participated in the due process violations above.

8　　　　Outside of the conclusory allegations about Hubbard in the cause of action,
9  there are no allegations of direct acts taken by Hubbard that violated Plaintiff's due
10 process rights. Accordingly, Hubbard is DISMISSED from this action. See
11 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of
12 a cause of action, supported by mere conclusory statements, do not suffice.")
13 (citation omitted). However, Plaintiff is granted leave to amend this claim against
14 Hubbard if he can truthfully do so. See, e.g., McQuillion v. Schwarzenegger, 369
15 F.3d 1091, 1099 (9th Cir. 2004) ("Leave to amend should be granted unless the
16 pleading could not possibly be cured by the allegation of other facts, and should be
17 granted more liberally to pro se plaintiffs.").

18　　　　According to the complaint, Puget promised Plaintiff that he would clear up
19 the misunderstanding regarding the correct inactive date, and Ducart deterred
20 Plaintiff from filing a complaint against Walsh. Neither Puget nor Ducart are
21 alleged to have been involved in the validation or re-validation process. These
22 allegations are unrelated to Plaintiff's due process challenges to the gang validation

---

[3] Although Barneburg is not named in this cause of action, the body of the complaint indicates that Barneburg submitted the false evidence that resulted in Plaintiff's erroneous re-validation as a gang member, which is the focus of Plaintiff's due process claims.

[4] Although Bradbury is not named in this cause of action, the complaint indicates that Bradbury knew that there no evidence supporting Plaintiff's validation yet continued to retain Plaintiff in SHU, which is the focus of Plaintiff's due process claims.

process. Accordingly the due process claims against Puget and Ducart are DISMISSED with leave to amend, if Plaintiff can truthfully do so.

Plaintiff's claim that Defendants have adopted vague rules regarding gang validation is also DISMISSED with leave to amend. Pursuant to Rule 8(a) of the Federal Rules of Civil Procedures, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002). Plaintiff has not specified which rules and/or regulations are vague. Defendants do not have fair notice as to what regulations violate his due process. If Plaintiff chooses to amend his claim, he should identify the regulations that he is challenging and specify how each regulation violates his due process rights.

### 2. First Amendment / Retaliation

Plaintiff claims that his First Amendment rights were violated in the following ways: (1) Defendant Tupy arbitrarily prohibited Plaintiff from communicating with his child by claiming that she was not his "natural" daughter despite prison records approving her as a visitor since her infancy in retaliation for a a history of conflict between Tupy and Plaintiff dating back to 1996; (2) Warden Ducart arbitrarily approved Tupy's actions based on gang activity; and (3) Defendants Ducart, Puget, Barneburg, Swift and Murphy, in their personal and professional capacities, reviewed two of Plaintiff's 2008 outgoing letters wherein he ridiculed the prison administration's housing policy for Crips gang members and deemed them "gang activity" without basis. (Compl. at 13.) It appears that these letters were confiscated by prison officials. (Id. at 18.)

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,

429 U.S. 274, 283–84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).  Here, Plaintiff fails to allege four out of the five elements of a viable First Amendment retaliation claim.  Plaintiff has not alleged that the type of activity he was engaged in was constitutionally protected — nor can he.  Personal correspondence is not constitutionally protected conduct, and therefore not protected conduct for the purpose of a First Amendment retaliation claim.  See, e.g., Barnett v. Centoni, 31 F.3d 813, 815–16 (9th Cir. 1994) (prisoner suing prison officials for retaliation must allege *inter alia* that he was retaliated against for exercising his constitutional rights).  Because Plaintiff was not engaged in protected conduct, he cannot (and has not) alleged that the retaliatory action was caused by Plaintiff's protected conduct.  Nor has Plaintiff alleged that the retaliatory action advanced no legitimate penological interest.  Finally, he has not alleged any chilling effect on the exercise of his First Amendment right.  Accordingly, to the extent that Plaintiff seeks to bring a First Amendment retaliation claim, this claim is DISMISSED for failure to state a claim.

However, liberally construed, Plaintiff has stated a violation of his First Amendment right to send and receive mail.  See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)).  Censorship of outgoing mail is justified only if (1) the regulation or practice in question furthers one or more of the substantial governmental interests of security, order and rehabilitation, and (2) the limitation on First Amendment freedoms is no greater than necessary to further the particular government interest involved.  See Procunier v. Martinez, 416 U.S. 396, 413 (1974), overruled on other grounds,

Thornburgh, 490 U.S. at 413–14. Liberally construed, Plaintiff's allegation that Defendants Tupy, Ducart, Puget, Barneburg, Swift, and Murphy prevented him from corresponding with his daughter, and from sending out correspondence ridiculing the prison administration by falsely claiming that the correspondence was gang-related states a cognizable First Amendment claim.

### 3. First Amendment, Equal Protection, Right to Associate

Plaintiff alleges that Defendants have violated his "First and Fourteenth Amendment rights to associate with family and friends of his own racial group by enforcing promulgating and implementing rules and/or regulations which effectively forbid Plaintiff in total isolation from associating with his family, friends, and even cancelling (after 23 years) the only black T.V. station democratically installed for racial balance (1991). Said rules/regulations forbid innocent correspondences, communications or contacts by or between black inmates in particular once it is alleged that one is in any distant way associated with the defunct pro-black prison gang." (Compl. at 14.)

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedures, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (internal quotation marks and citation omitted). Plaintiff has not specified which rules and/or regulations he feels wrongfully forbids his association with his friends and family and with inmates of other races.

Further, to the extent that Plaintiff challenges restrictions on his right to associate with his friends and family members, the Court notes that while the

Supreme Court has recognized a right to intimate association,[5] e.g., the right to maintain private relationships free of state intrusion, see <u>Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh</u>, 229 F.3d 435, 441 (3d Cir. 2000), "[a]n inmate does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration," <u>Overton v. Bazzetta</u>, 539 U.S. 126, 131 (2003).  Accordingly, "[s]ome curtailment of that freedom must be expected in the prison context." <u>Id.</u>

With respect to Plaintiff's challenges to restrictions on his right to associate with members of his own racial group, the Court notes while there are claims that can be stated for racial discrimination, this Court is unaware of legal basis for claim under Section 1983 for infringing on an inmate right to associate with persons of the same race.  The Constitution protects the right to associate in two distinct senses: (1) intimate association, as discussed above, and (2) expressive association, e.g., "the right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion." <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 618 (1984).  The Constitution does not protect the right to associate with members of one's racial group.

Accordingly, Plaintiff's claim that he has been denied his right to associate with family, friends, and members of his own racial group is DISMISSED for failure to state a claim.

However, it appears that Plaintiff has stated a cognizable claim under the Equal Protection Clause regarding the cancellation of the only black television station.  Plaintiff alleges that the prison is required to have racial balance in its television programming and that the black television station was in retaliation for a

---

[5]It is unclear whether the right to intimate association is rooted in the First Amendment or the Fourteenth Amendment.  See <u>Gardner v. Barry</u>, No. 1:10-CV-0527, 2010 WL 4853885, at *5 n. 5 (M.D. Pa. Nov. 23, 2010) (detailed analysis of "right to intimate association" caselaw).

successful hunger strike that resulted in negotiations and two proposed Senate bills. (Compl. at 19.) Liberally construed, Plaintiff has stated a violation of the Equal Protection Clause. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race.") (citation omitted).

### 4. Cruel and Unusual Punishment — SHU Placement

Plaintiff alleges that Defendants have violated his rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendment when they "maliciously and sadistically" placed and retained him in a SHU particularly designed for prison gang members, knowing that Plaintiff was not a prison gang members; and when they refused to release him even though he had met the prison's criteria of staying free of gang activity for a certain amount of time.

However, the placement and retention of an inmate in segregated housing, even for an indeterminate period of time, does not in and of itself implicate the Eighth Amendment. Toussaint v. Yockey, 722 F.2d 1490, 1494 n. 6 (9th Cir. 1984). The Ninth Circuit has held that "administrative segregation . . . is within the terms of confinement ordinarily contemplated by a sentence." See Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.), cert. denied, 516 U.S. 916 (1995) (holding that conditions associated with administrative segregation, such as confinement in a single cell for most of the day, did not violate the Eighth Amendment). The Eighth Amendment's prohibition against cruel and unusual punishment is not violated by classification programs which pursue "important and laudable goals" and are instituted under the State's authority to operate correctional facilities. See, e.g., Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (classification program designed to treat and reduce recidivism of sex offenders is well within state's authority to operate correctional facilities and does not violate contemporary standards of decency). Accordingly, misclassification does not inflict pain so as to be cruel and unusual punishment, in violation of the Eighth Amendment. See Hoptowit v. Ray,

1  682 F.2d 1237, 1255–56 (9th Cir. 1982). Nor is being retained in SHU despite
2  eligibility for inactive status a violation of the Eighth Amendment. See Hewitt, 459
3  U.S. at 468 ("[T]he transfer of an inmate to less amenable and more restrictive
4  quarters for nonpunitive reasons is well within the terms of confinement ordinarily
5  contemplated by a prison sentence." ). Accordingly, Plaintiff's Eighth Amendment
6  claims related to his alleged erroneous classification as a gang associate; his
7  placement in SHU; and retention in SHU are DISMISSED without leave to amend
8  for failure to state a claim.

### 5. Excessive Confinement and False Imprisonment

Plaintiff alleges that he is being wrongfully housed in SHU by the actions of Ducart, Puget, Townsend, Bradbury, Barneburg, Frisk, and Murphy, in violation of his rights under the Eighth and 14th Amendment. (Compl. at 15.) Specifically, Plaintiff alleges that although Frisk determined that there is no evidence justifying Plaintiff's continued retention in SHU or justifying his validation as an active prison gang associate, OCS has validated him as a gang member or associate and Ducart, Puget, Townsend, Bradbury, and Barneburg have approved this validation via the prison grievance procedure. (Ibid.) Plaintiff further alleges that Murphy, a senior agent at the OCS, has been instrumental in Plaintiff's validation. (Ibid.) Plaintiff also alleges that Defendants' actions have effectively denied him parole. (Id. at 16.)

Plaintiff's excessive confinement claim is DISMISSED for failure to state a claim because there is no indication that Plaintiff has been incarcerated past the maximum length of his sentence. See, e.g., Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and unusual punishment.").

False imprisonment is a state law tort, not a constitutional challenge. Under California law, false imprisonment is the "'unlawful violation of the personal liberty of another.'" Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir.1998)

(quoting Asgari v. City of Los Angeles, 15 Cal.4th 744, 757 (1997)). "There are two bases for claiming false imprisonment: imprisonment pursuant to a false arrest and unreasonable delay in bringing the arrested person before a judicial officer." Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999). Plaintiff does not allege that the arrest that resulted in his imprisonment was false; nor does he allege an unreasonable delay before he was brought before a judicial officer. Plaintiff's false imprisonment claim is therefore DENIED without leave to amend for failure to state a claim.

### 6. Cruel and Unusual Punishment — Denial of Correspondence

Plaintiff alleges that Stainer, Ducart, and Tupy's refusal to allow him to correspond with his daughter constituted cruel and unusual punishment because Plaintiff had no one of his race to talk to while housed in isolation and Plaintiff suffered from obvious hostilities from other inmates due to his SHU placement. (Compl. at 16.) Plaintiff alleges that the denial was both arbitrary and in bad faith. (Id. at 16–17.) He alleges that Tupy and Ducart created false justifications for denying his correspondence. (Ibid.) He further alleges that this denial was in retaliation for criticisms of prison officials in two out-going letters mailed in 2008. (Id. at 17.)

Plaintiff has failed to state an Eighth Amendment claim with respect to the denial of correspondence with his daughter. Although the Eighth Amendment protects against cruel and unusual punishment, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9–10 (1992) (internal quotations and citations omitted). Accordingly, this claim is DISMISSED without leave to amend for failure to state a claim.

### 7. State Created Liberty Interest

In this "cause of action," Plaintiff restates his prior claims and casts them as a violation of his state created liberty interest under Sections 3310-3320 and 3335-

3341.5 of the California Code of Regulations, title 15. (Compl. at 19.) Assuming arguendo that the above-referenced sections created a liberty interest, the deprivation of a liberty interest is unconstitutional only if the inmate did not receive due process of the law prior to the deprivation. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 244 (2005). In short, this cause of action is duplicative of his earlier due process claim and is therefore DISMISSED.

### 8. Racial Discrimination, 42 U.S.C. §§ 1981, 1982

Plaintiff claims that Ducart's removal of the black entertainment television network shortly after a successful hunger strike indicates "a policy of racial deliberate indifference to maintenance of blacks' contract." (Compl. at 20.) Title 42 U.S.C. § 1981 prohibits racial discrimination through both state and private action. See Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989). Because of § 1981's historical roots in the Equal Protection Clause of the Fourteenth Amendment, it covers only acts involving intentional discrimination, excluding from the statute's reach actions that merely have a disparate effect. Doe v. Kamehameha Schools, 470 F.3d 827, 836 (9th Cir. 2006) (en banc) (citing Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 390–91 (1982)). Liberally construed, Plaintiff has stated a claim that Ducart's removal of the black entertainment station, and Bramucci's rejection of the related appeals, violated 42 U.S.C. § 1981.

However, 42 U.S.C. § 1982 governs property rights and bars all racial discrimination in the inheritance, purchase, lease, sale, holding and conveyance of real and personal property. See 42 U.S.C. § 1982. The cancellation of the black entertainment station does not implicate 42 U.S.C. § 1982. Accordingly, Plaintiff's 42 U.S.C. § 1982 is DISMISSED without leave to amend for failure to state a claim.

### 9. Remaining Defendant Rogers

Plaintiff has also named C. Rogers, of the Office of Correctional Safety as a defendant. There are no allegations against Rogers. Accordingly, Rogers is DISMISSED from this action.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. Plaintiff has stated the following cognizable claims: violation of his due process rights by Defendants Stainer, Barneburg, Bradbury, Murphy, and Walsh; violation of his First Amendment rights to send outgoing mail by Tupy, Ducart, Puget, Barneburg, Swift, and Murphy; cancellation of the only black television station violated the Equal Protection Clause; and the 42 U.S.C. § 1981 claim against Ducart and Bramucci for cancelling the only black television station.

The following claims have been dismissed with leave to amend: due process claims against Hubbard, Ducart and Puget; and the due process claim regarding vagueness of regulations governing gang validation.

The following claims have been dismissed for failure to state a claim: First Amendment retaliation claim; right to associate claim; Eighth Amendment claims for alleged erroneous classification as a gang associate and related SHU term; Eighth Amendment claim for denial of correspondence; state created liberty interest claim; excessive confinement claim; and false imprisonment claim.

Defendant Rogers is dismissed from this action.

2. If Plaintiff wishes to amend his due process claims against Hubbard, Ducart, and Puget, and/or to amend his due process claim regarding the gang validation regulations, he must file an amended complaint **within thirty (30) days** from the date this order is filed. The amended complaint must include the caption and civil case number used in this order (15-01533 EJD (PR)) and the words FIRST AMENDED COMPLAINT on the first page. **An amended complaint completely replaces the previous complaints.** Plaintiff must therefore include in his amended complaint all the claims he wishes to present and all of the defendants he wishes to sue, including the Eighth Amendment claim which the Court has already found cognizable. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Plaintiff may not incorporate material from the prior complaint by reference. Claims and

1  defendants not included in the First Amended Complaint will not be considered by
2  the Court. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended
3  complaint must be simple, concise and direct and must state clearly and succinctly
4  how each and every Defendant is alleged to have violated Plaintiff's federally-
5  protected rights. See Fed. R. Civ. P. 8(a)(2).

**Failure to file an amended complaint within thirty days and in accordance with this order will result in a finding that further leave to amend would be futile. The action will therefore proceed only on the cognizable claims identified above.**

The Clerk of the Court is directed to send Plaintiff a blank civil rights complaint form with his copy of this Order.

3.  The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint, all attachments thereto, and a copy of this order upon **Defendants Stainer and Murphy** at **California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento CA 94283**; **and Defendants Ducart, Puget, Walsh, Barneburg, Tupy, Swift, and Bramuccci** at **Pelican Bay State Prison** (P.O. Box 7000, Crescent City, CA 95531-7000. The Clerk shall also mail a copy of this Order to Plaintiff.

4.  Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and the complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the day on which

the request for waiver was sent.  (This allows a longer time to respond than would be required if formal service of summons is necessary.)  Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.  If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty  (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

5.  No later than **ninety (90) days** from the date of this order, Defendants shall file a motion for summary judgment or other dispositive motion with respect to the claims in the complaint found to be cognizable above.

   a.  If Defendants elect to file a motion to dismiss on the grounds Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendants shall do so in an unenumerated Rule 12(b) motion pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003), cert. denied Alameida v. Terhune, 540 U.S. 810 (2003).  **The Ninth Circuit has held that Plaintiff must be provided with the appropriate warning and notice under Wyatt concurrently with Defendants' motion to dismiss.  See Woods v. Carey, 684 F.3d 934, 940 (9th Cir. 2012).**

   b.  Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.  Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.  If any Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

6.  Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** from the date

Defendants' motion is filed.

       a.    **In the event Defendants file a motion for summary judgment, the Ninth Circuit has held that Plaintiff must be concurrently provided the appropriate warnings under <u>Rand v. Rowland</u>, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).  See <u>Woods v. Carey</u>, 684 F.3d 934, 940 (9th Cir. 2012).**

Plaintiff is also advised to read Rule 56 of the Federal Rules of Civil Procedure and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that failure to file an opposition to Defendants' motion for summary judgment may be deemed to be a consent by Plaintiff to the granting of the motion, and granting of judgment against Plaintiff without a trial.  See <u>Ghazali v. Moran</u>, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam); <u>Brydges v. Lewis</u>, 18 F.3d 651, 653 (9th Cir. 1994).

    7.    Defendants <u>shall</u> file a reply brief no later than **fourteen (14) days** after Plaintiff's opposition is filed.

    8.    The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

    9.    All communications by the Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

    10.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

    11.    It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

12. Extensions of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

DATED: 7/16/2015

EDWARD J. DAVILA
United States District Judge

Order of Partial Service
P:\PRO-SE\EJD\CR.15\01533Phillips_svc.wpd

20