UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONNIE R. PHILLIPS,

        Plaintiff,

    v.

BRAMUCCI, et al.,

        Defendants.

Case No. 15-01533 EJD (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

(Docket No. 38)

Plaintiff, a California inmate, filed a pro se civil rights complaints under 42 U.S.C. § 1983 against medical officials at Pelican Bay State Prison ("PBSP") where he was previously incarcerated. The Court found the complaint, liberally construed, stated cognizable claims and ordered service of the complaint on Defendants.[1] (Docket No. 11.) Defendants Swift, Puget, Ducart, Tupy, Murphy, Barneburg, and Bramucci filed a motion for summary judgment asserting that Plaintiff failed to exhaust administrative remedies, the claims fail on the merits, and they are entitled to qualified immunity. (Docket No. 38, hereafter "Mot.".) Plaintiff filed an opposition, (Docket No. 53), and Defendants filed a

---

[1] The Court also dismissed with prejudice some claims for failure to state a claim and dismissed with leave to amend other claims, but Plaintiff did not file an amended complaint in the time provided. (Docket No. 11.) Accordingly, the action proceeded only on the cognizable claims identified in the Order of Service. (Id.)

United States District Court
Northern District of California

1   reply, (Docket No. 57).

2        Along with his opposition, Plaintiff filed an affidavit "in support of Rule 56(d)(1)"

3   asserting that facts are unavailable to him due to lack of discovery, miscommunications

4   with custody staff, and "overburdensome tactics of the defense over a layman."  (Docket

5   No. 55 at 2.)  Rule 56(d) provides that if a party opposing a summary judgment motions

6   shows "by affidavit or declaration that, for specified reasons, it cannot present facts

7   essential to justify its opposition, the court may (1) defer considering the motion or deny it;

8   (2) allow time to obtain affidavit or declarations or to take discovery; or (3) issue any other

9   appropriate order.  Fed. R. Civ. P. 56(d).

10        In reply, Defendants assert that the Court should not grant Plaintiff's Rule 56(d)

11   request for several reasons: (1) Plaintiff failed to request any discovery since filing this

12   action, and has provided no reason why he could not do so; (2) Plaintiff had access to all or

13   most of the documents pertaining to his claim during his deposition and was provided with

14   a complete copy of their summary judgment motion, including supporting exhibits; and (3)

15   Plaintiff fails to specify what discovery he believes will produce material facts or what

16   those material facts may be.  (Reply at 4.)

17        After reviewing the affidavit and Plaintiff's communications with this Court over

18   the course of this action, the Court finds that Plaintiff has failed to show due diligence on

19   his part with respect to discovery.  Plaintiff has failed to provide any evidence that

20   Defendants have not been forthright in responding to his discovery requests, if any, or

21   describe what "miscommunications" with custody staff or "overburdensome tactics" by the

22   defense prevented him from obtaining the necessary facts to refute Defendants' motion.

23   Furthermore, the Court notes that Plaintiff never once filed a request for an extension of

24   time to obtain further discovery and prepare his opposition.  Accordingly, the Court finds

25   no merit to Plaintiff's request, and DENIES it.

26        The matter is deemed submitted, and is discussed below.

27   ///

28   2

United States District Court
Northern District of California

# DISCUSSION

I.  **Statement of Facts and Claims**[2]

A.  **Gang Validation**

Plaintiff was first validated as an associate of the Black Guerrilla Family ("BGF") prison gang on July 25, 2006, and was housed in the Security Housing Unit ("SHU"). (Phillips Dep. 17:16-18:14.)  On October 26, 2012, Office of Correctional Safety ("OCS") Special Agent Rogers, a non-party to this action, reviewed Plaintiff's validation, which included the gang validation package submitted to the OCS by PBSP Institutional Gang Investigator ("IGI"), Defendant Barneburg.  (Bond Decl. Ex. H at 4; Barneburg Decl. 3:13-15, Ex. B; Phillips Dep. 117:30-120:5.)  At that time, an inmate could be re-validated if at least one source item concerning gang activity within the past six years directly linked the inmate to another validated gang associate.[3]  See Cal. Code Regs., tit. 15, § 3378(c)(1) (2012); (Barneburg Decl. 3:18-4:2 & Ex. A.)

The package included two letters Plaintiff had written in October 2008 in which he referenced two inmates who were also housed in the SHU.  (Bond Decl. Ex. H at 4; Barneburg Decl. Ex. B.)  Both of the referenced inmates were validated associates of the BGF prison gang and documented members of the Crips disruptive group.  (Barneburg Decl. 4:15-24 & Ex. B.)  Based on this information, the reporting officer determined that "[t]he fact that PHILLIPS keeps current regarding the location of other BGF associates and is informing his correspondents of this, shows his continued association with both the BGF prison gang, and the Crips disruptive group, and should be considered in any gang status update of PHILLIPS as association [*sic*] as described in CCR Title 15, section

---

[2] The following facts are undisputed unless otherwise indicated.
[3] According to Defendants, several amendments to Title 15 in 2015 changed the gang validation process, including shortening the relevant time period from six years to four years.   (Mot. at 4, fn. 3, citing Cal. Code Regs., tit. 15, § 3378.2(b) (2015).)  Defendants assert that even under the new standard, Plaintiff's 2008 letters would have been relevant gang activity at his 2012 review.  (Id., citing Cal. Code Regs., tit. 15, § 3378, *et seq*. (2012).)

1   3378(c)(8)(G)."  (Id. at 4:21-24.)  Based on this evidence and IGI Barneburg's findings

2   and recommendations, Agent Rogers validated Plaintiff as a BGF-associate.  (Id. at 5:20-

3   22.)

4        Plaintiff claims that he was wrongly validated as a prison gang member and

5   assigned to isolation in the SHU in retaliation for his litigation against prison officials; in

6   retaliation for an altercation between Plaintiff and prison officials, and as part of prison

7   officials' attempt to isolate black inmates in the SHU in response to "overblown" fears of

8   race riot.  (Compl. at 7, 9.)  Plaintiff was eligible for inactive review and release from SHU

9   in 2012 pursuant to a 2012 Special Threats Group ("STG") plan implemented by

10  Defendant Stainer, which requires that an inmate's gang status be reviewed every four

11  years.  Plaintiff claims that he was wrongfully re-validated as a gang member based on

12  Defendant Barneburg's false claim that gang-related materials had been discovered during

13  a search of Plaintiff's cell which he then submitted to the OCS.  (Compl. at 5, 8.)  Plaintiff

14  claims the OCS "maliciously approved the items" as gang-related without taking into

15  account Plaintiff's written objections.  (Id.)  Plaintiff claims that the submission of false

16  evidence was initiated by Defendant Murphy, who had "promised" that Plaintiff would

17  spend the rest of his life in SHU if he did not "confess and separate from a statewide

18  conspiracy by black inmates to kill staff."  (Id. at 5.)

19       The Court found that Plaintiff's allegations, liberally construed, stated cognizable

20  due process claims against Defendants Stainer, Barneburg, Bradbury, Murphy, and Walsh.

21  (Docket No. 11 at 7.)

22       **B.    Correspondence**

23       With respect to the two letters Plaintiff wrote in October 2008 discussed above, see

24  supra at 2-3, Defendants confiscated the letters in December 2008, finding that the letters

25  demonstrated Plaintiff's continued association with the BGF prison gang and the Crips

26  disruptive group, and recommended that the letters be considered in Plaintiff's gang

27  validation review.  (Barneburg Decl. 4:21-24 & Ex. B.)

28

United States District Court
Northern District of California

On August 2, 2012, Plaintiff requested approval to correspond with his daughter, Donnesha R. Phillips.  (Bond Decl. Ex. D. at 13; Tupy Decl. 2:20-25.)  Plaintiff stated his BGF affiliation and that Donnesha Phillips had been incarcerated for shooting her fiancé and was "now terribly stressed and alone in Nevada."  (Bond Decl. Ex. D at 13; Tupy Decl. Ex. A.)  Defendants assert that Plaintiff failed to provide any evidence of his father-daughter relationship with Donnesha Phillips.  (Bond Decl. Ex. D at 13; Tupy Decl. 2:20-25.)  Therefore, Plaintiff's correctional counselor recommended denying Plaintiff's request.  (Bond Decl. Ex. D at 13; Tupy Decl. 2:26-3:4 & Ex. A.)  Defendant Correctional Lieutenant Tupy then reviewed the request and adopted the counselor's recommendation.  (Tupy Decl. 3:5-9; Bond Decl. Ex. D at 13; Phillips Dep. 95:16-18.)

The Court found that Plaintiff's complaint, liberally construed, stated a violation of his First Amendment right to send and receive mail based on the allegation that Defendants Tupy, Ducart, Puget, Barneburg, Swift, and Murphy confiscated two letters written in December 2008, and prevented him from corresponding with his daughter.  (Docket No. 11 at 9-10.)

### C.   Cancellation of Cable Channel

Cable television at PBSP is provided by Charter Communications.  (Rico Decl. 2:1-4.)  In March 2014, Charter changed its cable service from analog to digital.  (Id.)  Following this change, two channels, BET[4] and ESPN, would no longer be included in the basic cable package, and would instead be offered for a premium.  Under the Department Operations Manual ("DOM"), section 23010.6, PBSP lacks authority to pay for channels that are not within Charter's basic cable package.  (Id. at 2:12-18.)  As a result, PBSP no longer receives BET.  (Id. at 2:19-20.)  On March 27, 2014, PBSP distributed a memorandum notifying inmates of this change.  (Id. at 2:8-11 & Ex. A; Bramucci Decl. 2:13-15 & Ex. A.)

---

[4] BET stands for Black Entertainment Television.

United States District Court
Northern District of California

The Court found that Plaintiff's complaint, liberally construed, stated a cognizable claim under the Equal Protection Clause based on the allegation that the prison is required to have racial balance in its television programming and that the cancellation of the black television station was in retaliation for a successful hunger strike that resulted in negotiations and two Senate bills.  (Docket No. 11 at 11-12.)  The Court also found sufficient facts to state a claim against Defendants Ducart and Bramucci under 42 U.S.C. § 1981 which prohibits racial discrimination.  (Id. at 15.)

## II.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Cattret, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may

6

be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'"   Celotex Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  See id. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.    Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is mandatory and no longer left to the discretion of the district court.   Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).  "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."  Id.  Even when the relief sought

cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies.  Id. at 85-86 (citing Booth, 532 U.S. at 734).  The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies.  Id. at 93.

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers.  See id. § 3084.1(e).  Under the current regulations, in order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee.  Id. § 3084.7.

Nonexhaustion under § 1997e(a) is an affirmative defense.  Jones v. Bock, 549 U.S. 199, 211 (2007).  Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints.  Id. at 215-17.  In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  Otherwise, defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Id. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  Id. at 1166.  But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding.  Id.

8

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy.  Id. at 1172; see id. at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of that process).  Once the defendant has carried that burden, the prisoner has the burden of production.  Albino, 747 F.3d at 1172.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. Id.  But as required by Jones, the ultimate burden of proof remains with the defendant.  Id.

### 1.   Inmate Appeals Challenging Gang Validation

According to the complaint, Plaintiff claimed that he exhausted six administrative appeals concerning his 2012 gang validation.  (Compl. at 2.)  Defendants assert that all but one of those appeals failed to reach the final level of review.  (Bond Decl. 4:7-6:4; Voong Decl. Ex. A.)  Furthermore, the one appeal that was exhausted (No. PBSP-14-03060) concerned the inactive review eligibility date that was applied at Plaintiff's 2014 annual hearing.  (Bond Decl. 6:5-9 & Ex. J; Voong Decl. Ex. A at 2 & Ex. C.)  Plaintiff did not file any other appeals regarding his gang validation.  (Bond Decl. Ex. A; Voong Decl. Ex. A.)
In opposition, Plaintiff merely asserts that the one appeal which was exhausted (No. PBSP-14-03060) "specifically speaks to his due process claim."  (Opp. at 4.)

In his complaint, Plaintiff claims that his indeterminate SHU term for gang association violates his due process rights in the following ways: (1) Defendants placed

and/or retained him in the SHU on the basis of erroneous, unreliable, and untrue information that fails to satisfy the "some evidence" standard; (2) Defendants failed to provide meaningful classification reviews in 2013 and 2014; (3) Defendants' incorrect labeling of Plaintiff as a gang member prevents him from becoming an inactive gang member since that process requires him to divulge information about his non-existent gang membership; (4) Defendants' gang validation and debriefing process is merely a pretext for retaining Plaintiff in the SHU; and (5) Defendants failed to assess the reliability of the items used to validate him and failed to show that the items related to actual gang activity. However, none of these claims were raised in appeal No. PBSP-14-03060.  As asserted by Defendants, the only issue raised by Plaintiff in that appeal was that incorrect active/inactive review dates were used to retain him in the SHU during an October 1, 2014 "committee action."  (Voong Decl. Ex. C at 5.)  Furthermore, Plaintiff did not raise this particular claim in the instant action.  Accordingly, it cannot be said that appeal No. PBSP-14-03060 exhausted any of the due process claims raised in this action.

Based on the foregoing, the Court finds that Defendants have met their burden of producing evidence showing that Plaintiff failed to exhaust his administrative remedies with respect to any of the due process claims raised in this action.  <u>Albino</u>, 747 F.3d at 1166.  In response, Plaintiff has failed to come forward with evidence showing that existing and generally available administrative remedies were effectively unavailable to him.  <u>Id.</u> at 1172.  Accordingly, Defendants are entitled to summary judgment on the due process claims under Rule 56.  <u>Id.</u> at 1166.

## 2.    <u>Inmate Appeal Challenging Denial of Correspondence</u>

Plaintiff filed an inmate appeal on August 21, 2012, (No. PBSP-D-12-02661) challenging the denial of his request to correspond with his daughter.  (Bond Decl. Ex. A at 3 & Ex. D.)  The first level of review denied the appeal on September 21, 2012, for lack of proof of a familial relationship with Donnesha Phillips, noting her status as a Nevada-state-prisoner.  (Bond Decl. Ex. D at 11.)  Plaintiff appealed and was denied at the second

level of review on October 9, 2012, on the same basis.  (Bond Decl. Ex. D at 9-11.)

Plaintiff then submitted the birth certificate of Donnesha Phillips as proof of their father-

daughter relationship in his appeal to the third level of review.  (Bond Decl. Ex. D at 12.)

The third level review rejected the appeal on December 12, 2012, and sent the appeal back

to the second level for an amended decision in light of the additional evidence.  (Ducart

Decl. at ¶ 3.)  In an amended second level response dated January 3, 2013, Plaintiff's

appeal was again denied, this time based on his gang validation.  (Bond Decl. Ex. D at 1-

3.)  Defendants assert that Plaintiff did not thereafter appeal the matter to the third and

final level of review.  (Bond Decl. Ex. D; Voong Decl. Ex. A.)

In opposition, Plaintiff asserts that appeal No. PBSP-D-12-02661 was decided at the

third level on December 12, 2012, and thereby constitutes exhaustion.  (Opp. at 5.)  But as

discussed above, the third level of review did not issue a decision on December 12, 2012,

but rather rejected it and sent the matter back down to the second level to consider the new

evidence provided by Plaintiff.  There is no evidence, and Plaintiff does not assert, that he

then appealed the second level review's amended decision denying the matter to the third

level.  Accordingly, the Court finds that Defendants have met their burden of producing

evidence showing that Plaintiff failed to exhaust his administrative remedies with respect

to this First Amendment claim.  Albino, 747 F.3d at 1166.  In response, Plaintiff has failed

to come forward with evidence showing that existing and generally available

administrative remedies were effectively unavailable to him.  Id. at 1172.  Accordingly,

Defendants are entitled to summary judgment on the First Amendment claim under Rule

56.  Id. at 1166.

### 3.  Inmate Appeals Challenging Cancellation of BET

On March 27, 2014, Plaintiff filed an appeal (No. PBSP-D-14-00872), alleging

racial discrimination in the cancellation of the BET channel.  (Bond Decl. Ex. A at 3 & Ex.

B.)  PBSP Television Specialist Rico, a non-party to this action, informed Plaintiff that the

cable service provider decides the cable channels at PBSP.  (Id. at Ex. B at 5; Phillips Dep.

United States District Court
Northern District of California

United States District Court
Northern District of California

86:23-89:9.)  On April 8, 2014, Correctional Lieutenant Hall, a non-party to this action, added that PBSP's cable package had changed based on budget considerations and directed Plaintiff's attention to the DOM, section 23010.6.  (Bond Decl. Ex. B at 5-6; Phillips Dep. 89:10-90:12.)  PBSP Inmate Appeals Analyst, Defendant Bramucci, then issued Plaintiff a letter the next day cancelling Plaintiff's appeal on the basis that the matter was outside CDCR's jurisdiction.  (Bramucci Decl. 2:17-21 & Ex. C; Bond Decl. Ex. B at 7.)

On April 10, 2014, Plaintiff filed another inmate appeal (No. PBSP-D-14-00991), challenging Bramucci's cancellation of his first appeal on the matter.  (Bond Decl. Ex. A at 3 & Ex. C.)  His appeal bypassed the first level and was reviewed directly at the second level of review.  (Bond Decl. Ex. C at 3.)  In a letter dated May 12, 2014, Defendant Ducart denied Plaintiff's appeal on findings that Charter Communications had discontinued BET and that such action had no racist motive or effect.  (Bond Decl. Ex. C at 1-2.)  Plaintiff appealed to the third level of review, who denied the appeal on August 21, 2014.  (Voong Decl. Ex A at 1 & Ex. B at 1-2.)  The third level of review explained that "the Examiner will only address the cancellation decision of [Plaintiff's appeal].  All other issues will not be addressed and administrative remedies are not considered to be exhausted for these issues."  (Id. at Ex. B at 1.)

Defendants assert that Plaintiff only appealed Bramucci's cancellation decision and not the underlying issue regarding the BET channel.  (Mot. at 10.)  As Defendants point out, the third level of review explicitly stated that the Examiner was only addressing the cancellation decision and that administrative remedies were not considered to be exhausted for all the other issues not addressed.  (Voong Decl. Ex. B at 1.)  Plaintiff does not refute his failure to exhaust the issue of the cancelled BET channel in opposition.  Accordingly, the Court finds that Defendants have met their burden of producing evidence showing that Plaintiff failed to exhaust his administrative remedies with respect to his equal protection and racial discrimination claims.  Albino, 747 F.3d at 1166.  In response, Plaintiff has failed to come forward with evidence showing that existing and generally available

12

administrative remedies were effectively unavailable to him.  Id. at 1172.  Accordingly,

Defendants are entitled to summary judgment on Plaintiff's equal protection and racial

discrimination claims under Rule 56.  Id. at 1166.

### B.    Due Process

Defendants also assert that Plaintiff's due process claim challenging his gang

validation fails on the merits because there was "some evidence" to support the decision.

(Mot. at 11.)

Changes in conditions of confinement may amount to a deprivation of a state-

created and constitutionally-protected liberty interest, provided the liberty interest in

question is one of "real substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87

(1995), and, in particular, where the restraint "imposes atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life," see id. at 484.  In

Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary

proceedings do not satisfy due process requirements unless there is "some evidence" in the

record to support the findings of the prison disciplinary board.  The Ninth Circuit requires

that "some evidence" also support a decision to place an inmate in segregation for

administrative reasons.  See Toussaint v. McCarthy, 801 F.2d 1080, 1104 (9th Cir. 1986).

This standard applies to placement in a SHU for gang affiliation.  Bruce v. Ylst, 351 F.3d

1283, 1287-88 (9th Cir. 2003) (noting that any one of three pieces of evidence -- a sheriff's

department report that prisoner was a gang member, a probation report that prisoner's

codefendant was a gang member, and a statement from a prison informant -- would

constitute "some evidence").  The standard is met if there was some evidence from which

the conclusion of the administrative tribunal could be deduced.  See Toussaint, 801 F.2d at

1105 (citing Hill, 472 U.S. at 455).  Ascertaining whether the standard is satisfied does not

require examination of the entire record, independent assessment of the credibility of

witnesses or weighing of the evidence.  See id.  Instead, the relevant question is whether

there is any evidence in the record that could support the conclusion reached.  See id.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The Ninth Circuit also requires that the evidence relied upon by prison disciplinary boards contain "some indicia of reliability," <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987), but has not directly considered whether a corresponding need for evidentiary reliability exists when prison officials segregate an inmate for administrative reasons. Some district courts have extended the reliability requirement to the administrative context, however, holding that "the evidence relied upon to confine an inmate to the SHU for gang affiliation must have 'some indicia of reliability' to satisfy due process requirements." <u>Madrid v. Gomez</u>, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

Defendants assert that Plaintiff's validation comports with due process because it was supported by two letters written by Plaintiff. (Barneburg Decl. 4:15-19 & Ex. B.) In the two letters dated October 26, 2008, and October 30, 2008, Plaintiff communicated to the intended recipients the housing location for two validated BGF-associates and documented Crips-members. (<u>Id.</u>) According to Defendants, gangs often communicate using subtle messages through similar letters. (Mot. at 12, citing to Murphy Decl. 4:18-5:17; Barneburg Decl. 4:25-5:17.) They assert that seemingly innocuous messages to someone who is unfamiliar with gang operations may actually further gang activity, and that the location of gang associates throughout the prison system is key information for organizing gang members to action. (<u>Id.</u>) Defendants also assert that merely demonstrating such knowledge of such information to other gang affiliates is a way that gang associates communicate "their continued commitment to the gang and their relevance in the gang's hierarchy." (<u>Id.</u>) In opposition, Plaintiff asserts that the letters at issue merely "ridiculed the administration's abuse of the validation process for having two other 'known' street thugs housed as associates to the defunct prison gang." (Opp. at 4.)

Based on the evidence presented, the Court finds that the letters constitute some evidence to support the decision to re-validate Plaintiff as a prison gang associate. <u>See</u> <u>Toussaint</u>, 801 F.2d at 1105. Defendant Barneburg reviewed the two letters and found certain factors that indicated gang activity: the mention of the location of Plaintiff's fellow

BGF associates had no context within the rest of the letter; the location of gang members may help determine where the gang has strength throughout the CDCR; in conveying the information, Plaintiff might be demonstrating his own commitment to the BGF and Crips; and at a minimum, by communicating the location of the two BGF associates to a third party, Plaintiff was indicating those associates' importance. (Barneburg Decl. at ¶¶ 10-12.) These considerations were certainly sufficient to identify the letters as source items to support Plaintiff's ongoing association with the BGF. Furthermore, the letters clearly bear "some indicia of reliability" as it is undisputed that they were written by Plaintiff.

Even if the information in the letters was truly innocuous and not intended to further gang activity, Plaintiff's validation as a gang member based thereon did not violate due process. The information contained in the letters and the Defendants' valid concerns regarding their relevance in furthering gang activity constitutes evidence that supports the decision to re-validate Plaintiff. See Toussaint, 801 F.2d at 1105. Lastly, the fact that a prisoner may have been placed incorrectly in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making. See Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983).

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's due process claim. See Celotex Corp., 477 U.S. at 323. In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, id. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, Keenan, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law. Id.; Celotex Corp., 477 U.S. at 323.

### C.   **First Amendment**

#### 1.   **Confiscation of Letters**

Defendants assert that Plaintiff's First Amendment claim regarding the confiscation of his letters is barred under the applicable statute of limitations. (Mot. at 13.)

Section 1983 does not contain its own limitations period.  The appropriate period is that of the forum state's statute of limitations for personal injury torts.  See Wilson v. Garcia, 471 U.S. 261, 276 (1985); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999); Elliott v. City of Union City, 25 F.3d 800, 802 (9th Cir. 1994).  In the event the state has multiple statutes of limitations for different torts, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.  See Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999).  In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the applicable statute in § 1983 actions.  See Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004); see also Silva, 169 F.3d at 610 (limitations period for filing § 1983 action in California governed by residual limitations period for personal injury actions in California, which was then one year and was codified in Cal. Civ. Proc. Code § 340(3)); Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which is now two years; enacted in 2002).

It is federal law that determines when a cause of action accrues and the statute of limitations begins to run in a § 1983 action.  Wallace v. Kato, 549 U.S. 384, 388 (2007); Elliott, 25 F.3d at 801-02.  Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  See TwoRivers, 174 F.3d at 991-92; Elliott, 25 F.3d at 802.  The statute of limitations generally begins to run only once a plaintiff has knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury."  United States v. Kubrick, 444 U.S. 111, 122 (1979).

A federal court must give effect to a state's tolling provisions.  See Hardin v. Straub, 490 U.S. 536, 543-44 (1989); Marks v. Parra, 785 F.2d 1419, 1419-20 (9th Cir. 1986).  In California, this includes tolling the statute of limitations during imprisonment and while criminal charges are pending.  The statute of limitations begins to run immediately after the recognized disability period ends.  See Cabrera v. City of Huntington

Park, 159 F.3d 374, 378-79 (9th Cir. 1998) (following California Law).  California Civil Procedure Code section 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life."  See Cal. Civ. Proc. Code § 352.1(a).  The tolling is not indefinite, however; the disability of imprisonment delays the accrual of the cause of action for a maximum of two years.  See id.  Thus, an inmate has four years to bring a § 1983 claim for damages in California, i.e., the regular two year period under section 335.1 plus two years during which accrual was postponed due to the disability of imprisonment.

Here, Defendants assert that Plaintiff's claim regarding the confiscation of his letters in December 2008 accrued when he exhausted his administrate appeal regarding the matter on March 3, 2009.  (Bond Decl. Ex. K; Voong Decl. Ex. A at 2.)  The Court agrees that March 3, 2009, was the latest date when Plaintiff knew of the injury which is the basis of this action, and the earliest date when he could proceed with a section 1983 action in federal court after satisfying the PLRA's exhaustion requirement.  See TwoRivers, 174 F.3d at 991-92.  Plaintiff had four years thereafter, including two years for tolling for the disability of imprisonment, to file a timely action, i.e., no later than March 3, 2013.  See Cal. Civ. Proc. Code § 352.1(a).   However, Plaintiff waited over six years from that time to file this action on April 3, 2015.  (Mot. at 13.)  Plaintiff offers no argument in opposition to refute Defendants' assertion of the timeliness bar.  Accordingly, Plaintiff's First Amendment claim regarding the unlawful confiscation of his December 2008 letters is DISMISSED with prejudice as untimely.

## 2.   Denial of Correspondence with Daughter

Defendants assert that Plaintiff's claim regarding the denial of his request to correspond with his daughter fails on the merits because there was a substantial government interest of preventing gang activity.  (Mot. at 14.)

Prisoners enjoy a First Amendment right to send and receive mail.  See Witherow v.

Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)).  A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests."  See Turner v. Safley, 482 U.S. 78, 89 (1987).  The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning *incoming* mail received by prisoners from non-prisoners.  See Thornburgh, 490 U.S. at 413.

Defendants assert that the restriction on Plaintiff's correspondence with his daughter, who was a prisoner in Nevada, furthered the substantial governmental interest of preventing gang activity.  (Mot. at 15.)  The request was denied in an amended decision at the second level because Plaintiff was a validated associate of a prison gang.  (Bond Decl. Ex. D.)  Plaintiff admitted in his deposition that it "would not have been unreasonable" to perceive a risk that he would exercise his gang influence to help his daughter in prison. (Phillips Dep. 106:23-107:24.)  Accordingly, the denial of the request furthered the substantial government interest of preventing gang activity.  The Court agrees.  There is no dispute that preventing gang activity is a legitimate penological interest.  Furthermore, the restriction on corresponding with his daughter was narrowly tailored for the time that she was incarcerated; Defendants point out that there is no allegation or evidence the Plaintiff was prevented from corresponding with her before her incarceration or upon her release. (Mot. at 15.)  Plaintiff makes no assertion to the contrary for this Court to believe otherwise.

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Plaintiff's First Amendment claim with respect to the temporary restriction of correspondence with his daughter.  See Celotex Corp., 477 U.S. at 323.  In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, id. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, Keenan, 91 F.3d at 1279.  Accordingly, Defendants are

United States District Court
Northern District of California

18

1    entitled to judgment as a matter of law on this claim.  Id.; Celotex Corp., 477 U.S. at 323.

2        **D.    Equal Protection  and § 1981 Claims**

3        Defendants assert that Plaintiff's equal protection and § 1981 claims regarding the

4    cancellation of the BET channel fail on the merits because there was no intentional race-

5    discrimination.  (Mot. at 16.)

6        "The Equal Protection Clause of the Fourteenth Amendment commands that no

7    State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

8    which is essentially a direction that all persons similarly situated should be treated alike."

9    City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v.

10   Doe, 457 U.S. 202, 216 (1982)).  A plaintiff alleging denial of equal protection under 42

11   U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful

12   discrimination or allege facts that are at least susceptible of an inference of discriminatory

13   intent.  Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).

14   To state a claim for relief, the plaintiff must allege that the defendant state actor acted at

15   least in part because of plaintiff's membership in a protected class.  Serrano v. Francis, 345

16   F.3d 1071, 1081-82 (9th Cir. 2003).  Proof of a discriminatory intent or purpose is required

17   to show an equal protection violation based on race.  See, e.g., Thornton v. City of St.

18   Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (mere indifference to effect of decision on

19   member of protected class not discriminatory intent; conclusory statements of bias not

20   sufficient to prevent summary judgment); Serrano, 345 F.3d at 1082 (plaintiff must

21   produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance

22   of the evidence that the decision was motivated by the plaintiff's membership in the

23   protected class to avoid summary judgment).

24       Here, Plaintiff fails to show that Defendants acted because of his race.  The

25   undisputed facts show that the BET channel became unavailable on the basic cable

26   package due to changes by the cable service provider, not due to any action by the

27   Defendants.  See supra at 4-5.  Furthermore, PBSP lacked authority to pay for any

28

United States District Court
Northern District of California

United States District Court
Northern District of California

additional channels that were not within the basic cable package, which was a racially neutral policy.  Id.  Accordingly, there is no evidence that Defendants were directly responsible for the unavailability of the BET channel, or that there was any discriminatory intent or purpose in denying the request for the channel to be restored when it was beyond the authority of PBSP to do so.  Furthermore, Defendants point out that BET was cancelled for all inmates at PBSP, not just for Plaintiff and those of his race.  (Mot. at 18-19.)  Accordingly, it cannot be said that the unavailability of the BET channel resulted in a racially discriminatory treatment of Plaintiff.  (Id.)  Plaintiff offers no argument in opposition to show otherwise.  Because there is no genuine dispute as to any material fact, Defendants are entitled to summary judgment on this equal protection claim.

With respect to Plaintiff's claim under § 1981, that section provides that all persons shall have the same right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.  Section 1981 prohibits racial discrimination through both state and private action.  See Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989).  Because of § 1981's historical roots in the Equal Protection Clause of the Fourteenth Amendment, it covers only acts involving intentional discrimination, excluding from the statute's reach actions that merely have a disparate effect.  Doe, 470 F.3d at 836 (citing Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 390-91 (1982)); see Evans, 869 F.2d at 1344 (claim under § 1981 does not require allegations of conspiracy, but does require showing of intentional discrimination on account of race).  In the context of a contract other than one for employment or education, the Ninth Circuit has held that in order to establish a prima facie case under § 1981, the plaintiff must show that he is a member of a protected class, he attempted to contract for certain services, and he was denied the right to contract for those services.  See Lindsey v. SLT Los Angeles, LLC, 432 F.3d 954, 958-59 (9th Cir. 2005) (applying § 1981 to a claim of racial discrimination by a hotel contracting with an African-American group for use of a hotel ballroom).  The

United States District Court
Northern District of California

1   Ninth Circuit has not decided whether such a plaintiff must also show that the services

2   remained available to similarly-situated individuals who were not members of the

3   plaintiff's protected class.  See id. at 959-60.

4        Defendants assert that Plaintiff's § 1981 claim fails because he cannot demonstrate

5   that he was intentionally treated unequally because of his race or that he has contractual

6   rights to the continuation of the BET channel.  (Mot. at 15, 17-18.)  In opposition, Plaintiff

7   asserts that he negotiated with prison officials to keep the BET channel in exchange for the

8   black population refraining from "blasting the music out loud" when the administration

9   contemplated the removal of all speakers from radios and television.  (Pl.'s Decl. in Supp.

10  Opp. at 1; Docket No. 55.)  In reply, Defendants assert that such an agreement is

11  immaterial because the undisputed facts show that Plaintiff was not a party to the contract

12  for cable services between PBSP and Charter.  (Reply at 3.)  Furthermore, Defendants

13  point to decisions showing that courts have recognized that inmates are not entitled to

14  rights under a prison's contract for cable services.  (Mot. at 17, citing Webster v. Stanton,

15  No. CIVS072282MCEKJMP, 2008WL 1721902 at *1 (E.D. Cal. Apr. 10, 2008)

16  (dismissing as frivolous inmate's claim that prison officials were biased against black

17  inmates because BET was not accessible in the prison.)

18       Based on the foregoing, the Court finds that Plaintiff's claim under § 1981 fails

19  because Plaintiff ultimately cannot show intentional discrimination based on his race.  As

20  discussed above, the unavailability of the BET channel was not due to any action on the

21  part of Defendants, but rather a change of service by the cable company.  See supra at 17.

22  Furthermore, PBSP simply has no authority to pay for channels beyond the basic cable

23  package, be it BET or ESPN, under a racially neutral policy.  Accordingly, it cannot be

24  said that Defendants intentionally interfered with Plaintiff's right to view a particular

25  television station, assuming such a right exists, because of his race.

26       Based on the evidence presented, Defendant has shown that there is no genuine

27  issue of material fact with respect to Plaintiff's equal protection and § 1981 claims.  See

28                                          21

Celotex Corp., 477 U.S. at 323.  In response, Plaintiff has failed to point to specific facts showing that there is a genuine issue for trial, id. at 324, or identify with reasonable particularity the evidence that precludes summary judgment, Keenan, 91 F.3d at 1279. Accordingly, Defendants are entitled to judgment as a matter of law.  Id.; Celotex Corp., 477 U.S. at 323.

### E.   Unserved Defendants

Defendants Stainer, Bradbury, and Walsh have not been served in this action although it was so ordered in the Court's Order of Partial Service.  (Docket No. 11 at 16.) The claim against Defendants Stainer, Bradbury, and Walsh is that they denied Plaintiff's right to due process during the gang validation.  (Id.); see supra at 3.

Summary judgment may be granted by the court sua sponte in favor of a nonappearing party on the basis of facts presented by other defendants who have appeared. See Columbia Steel Fabricators v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir.) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant), cert. denied, 516 U.S. 864 (1995); see also Abagninin v. AMVAC Chemical Corp., 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be stated); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding district court on its own motion may grant motion to dismiss as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants).

Here, Defendants Stainer, Bradbury, and Walsh are in a position similar to served Defendants who have shown that they are entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies and on the merits.  See supra at 8-9,

United States District Court
Northern District of California

13-15.  Based on a thorough review of the single inmate appeal at issue, the Court finds that Plaintiff has also failed to exhaust his claim against Defendants Stainer, Bradbury, and Walsh.  As discussed above, inmate appeal No. PBSP-14-03060 contained none of the due process claims raised in this action.  See supra at 9.  Accordingly, it cannot be said that this appeal satisfies the PLRA's exhaustion requirement with respect to any of the due process claims against Defendants Stainer, Bradbury, and Walsh.  Furthermore, the Court has determined that Plaintiff's re-validation as a gang associate comports with due process, and therefore his due process claim fails on the merits.  Because Defendants Stainer, Bradbury, and Walsh are in a position similar to that of moving defendants with respect to this claim, they are also entitled to summary judgment on the merits.

Based on the foregoing, the Court sua sponte grants summary judgment in favor of Defendants Stainer, Bradbury, and Walsh on the basis of facts presented by other Defendants who have appeared, showing that Plaintiff failed to administratively exhaust any of the due process claims in this action, including the claims against Defendants Stainer, Bradbury, and Walsh, and on the merits.  See Columbia Steel Fabricators, 44 F.3d at 802-03.

## CONCLUSION

For the reasons stated above, Defendants Swift, Puget, Ducart, Tupy, Murphy, Barneburg, and Bramucci's motion for summary judgment, (Docket No. 38), is **GRANTED**.[5]  The claims against them are **DISMISSED** with prejudice.

Because unserved Defendants Stainer, Bradbury, and Walsh are in a position similar to the Defendants who have appeared in this action with respect to the due process claim against them, summary judgment is also granted in their favor.  The claims against

---

[5] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendant's qualified immunity argument.

them are **DISMISSED** with prejudice.

This order terminates Docket No. 38.

**IT IS SO ORDERED.**

Dated:   9/30/2016



EDWARD J. DAVILA
United States District Judge

PRO-SE\EJD\CR.15\01533Phillips_grant.msj